## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DAVID A. STEWART**                                      **CIVIL ACTION**

**VERSUS**                                                         **NO. 15-510-RLB**

**H & E EQUIPMENT SERVICES, INC.**                **CONSENT CASE**

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court is Plaintiff's Motion for Partial Summary Judgment. (R. Doc. 37).  The motion is opposed. (R. Doc. 46).  Plaintiff has filed a Reply. (R. Doc. 52).

Also before the Court is Defendant's Motion for Summary Judgment (R. Doc. 47).  The motion is opposed. (R. Doc. 55).  Defendant has filed a Reply. (R. Doc. 64).  Plaintiff has filed a Surreply. (R. Doc. 67).

As the parties' motions for summary judgment concern the same issues and arguments, the Court considers them together in a single ruling.

**I.      Procedural History and Background**

David A. Stewart ("Plaintiff" or "Employee") was employed by H&E Equipment Services, Inc. ("Defendant," "Company," or "H&E"), or its predecessor, beginning in July 1993. Plaintiff sold cranes and supervised others selling cranes for Defendant.  On or about February 15, 2013, in light of Plaintiff's promotion to branch manager of Defendant's Birmingham branch, the parties entered into an employment contract titled "Retainer, Confidentiality and Non-Competition Agreement." (R. Doc. 1-1, "Agreement").

In its preamble, the Agreement states that "in consideration of: (1) continued employment by H&E of Employee on an at-will basis subject to the provisions of Section 5(d) below;[1] (2) promotion to the position of Branch Manager, and an increase in base salary; and (3) H&E's further agreement to provide Employee with access to confidential Company information and data, Employee hereby agrees [to the following five Sections of the Agreement]."

Most relevant to this dispute are the Sections governing non-competition covenants (Section 2) and continuing compensation (Section 4). Section 2(a) of the Agreement provides the following, with emphasis added:

> During Employee's employment by Company and for a period of twelve (12) months immediately following the termination of Employee's employment for any reason whatsoever, _whether or not for cause_, Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise) [engage in certain activities consisting of competition or solicitation].

Section 2(c) of the Agreement provides the following, with emphasis added:

> Before taking any position with any person or entity during the twelve-month period following the termination of Employee's employment for any reason, _with or without cause_, Employee will give prior written notice to Company of the name of such person or entity.

Section 4(a) of the Agreement provides the following, with emphasis added:

> In the event Employee's employment is terminated by Company _without cause_, the provisions of Section 2 above shall apply and, as consideration therefor, Company shall pay to Employee, every two weeks one-twenty sixth (1/26th) of the total compensation paid to Employee by Company during the twelve-month period immediately preceding termination of Employee's employment.

The parties dispute whether Plaintiff was fired without cause as required by Section 4(a) for the payment of compensation continuation and whether Defendant's duty to pay compensation

---

[1] Section 5(d) of the Agreement provides the following: "Employee acknowledges that Employee has not been promised any specific term of employment with H&E, and agrees that neither this Agreement nor any other agreement, whether in writing or orally, constitutes or promises a specific term of employment. Employee is employed on an at-will basis and Employee's employment with Company may be terminated by Employee or by Company at any time."

continuation is dependent on Defendant's enforcement of its rights to non-competition and non-solicitation pursuant to Section 2 of the Agreement.

Defendant terminated Plaintiff's employment on or about May 1, 2015.[2]  At that time, Defendant presented Plaintiff with a document titled "Separation Agreement and Release." (R. Doc. 1-2).  Through this document, Defendant offered to pay Plaintiff severance in the amount of $50,000 for the release of any legal rights Plaintiff may have against Defendant. (R. Doc. 1-2 at 1).  If Plaintiff agreed to sign the release, the release would have effectively superseded the Agreement, with the exception that it would "not impact or affect any restrictive covenants between [Plaintiff] and the Company such as any non-competition promises, non-solicitation promises, or confidentiality promises." (R. Doc. 1-2 at 3).  Plaintiff did not sign the release.

On May 12, 2015, Defendant confirmed in writing that Plaintiff refused to sign the release, further stating its position that it would not pay continued compensation pursuant to Section 4 of the Agreement because it would not enforce Plaintiff's non-compete and non-solicitation obligations in Section 2 of the Agreement. (R. Doc. 47-9).

On August 3, 2015, Plaintiff initiated this action, alleging that Defendant terminated his employment "without cause" and, accordingly, he is entitled to $169,302.73 pursuant to the terms of Section 4(a) of the Agreement. (R. Doc. 1).[3]

On December 10, 2015, Plaintiff filed his first Motion for Summary Judgment. (R. Doc. 16).  Plaintiff argued that based on the plain language of Paragraph 4(a) of the Agreement, Defendant breached the contract and he is entitled to the 12 months of continued compensation

---

[2] Plaintiff's affidavit provides a termination date of May 1, 2015. (R. Doc. 16-4 at 2).  John Engquist, Jr., H&E Senior Region Vice President, has submitted an affidavit that indicates Plaintiff's termination date was April 30, 2015. (R. Doc. 47-4 at 1).

[3] On September 21, 2015, Plaintiff filed an Amended Complaint for the purpose of providing more details in support of diversity jurisdiction. (R. Doc. 6).

sought.  The Court denied the motion as premature pursuant to Rule 56(d), holding that

Defendants were entitled to conduct discovery regarding the events concerning Plaintiff's

termination, as well as regarding the formation and interpretation of language in the Agreement.

(R. Doc. 32).

On August 3, 2016, after the close of non-expert discovery, Plaintiff filed the instant

Motion for Partial Summary Judgment, which seeks summary judgment on all issues with the

exception of damages. (R. Doc. 37).  Plaintiff argues that there is no dispute that he was

terminated "without cause" because Defendant has admitted that Plaintiff's "employment was

not terminated because of any specific act of 'wrongdoing, misconduct or misfeasance.'" (R.

Doc. 37-1 at 2).  Plaintiff further argues that there is no dispute that he complied with the

requirements of the compensation continuation provisions in Paragraph 4(a) by refraining from

competing with Defendant while employed and for a full year following termination. (R. Doc.

37-1 at 5).  Plaintiff does not seek summary judgment on the issue of damages, arguing that the

parties dispute the specific amounts of compensation, attorneys' fees and costs to which Plaintiff

is entitled. (R. Doc. 37 at 1).

On September 23, 2016, Defendant filed its Motion for Summary Judgment, which seeks

dismissal of the action in its entirety. (R. Doc. 47).  Defendant argues that the compensation

continuation provision in Paragraph 4(a) is unenforceable because there is no dispute that

Defendant advised Plaintiff at the time of his termination that it would not enforce the non-

compete and non-solicitation provisions of the Agreement. (R. Doc. 47-1 at 5-7).  In addition,

Defendant argues that the term "cause" in the contract should be interpreted by its ordinary

dictionary meaning, and that Defendant properly terminated Plaintiff because of his performance

in the service department. (R. Doc. 47-1 at 7-9).  Finally, Defendant argues that Plaintiff has not

4

demonstrated that he suffered any damages because he did not seek another position after his employment terminated despite being informed that Defendant would not enforce the non-complete and non-solicitation provisions of the Agreement. (R. Doc. 47-1 at 9-10).

## II.   Law and Analysis

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.*  The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.*  A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996).  Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).  If, once the non-moving party has been given the opportunity to raise a genuine fact

issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322-23.

B.      **Louisiana Law on Contract Interpretation**

The Court applies substantive state law in a diversity action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *see ACS Construction Co., Inc. of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003) ("We look to state law for rules governing contract interpretation."). In addition, Section 5(h) of the Agreement provides that the Agreement "shall be governed by and construed and enforced in accordance with the laws of the State of Louisiana." Accordingly, the Court will interpret the Agreement in accordance with Louisiana law.

"Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "The language of the policy is the starting point for determining that common intent." *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 180 (5th Cir. 2015) (quoting *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048.

"A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049. "Each provision in a contract must be interpreted in light of the other provisions so that each is given

the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.  "A doubtful

provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of

the parties before and after the formation of the contract, and of other contracts of a like nature

between the same parties." La. Civ. Code art. 2053.  "Equity, as intended in the preceding

articles, is based on the principles that no one is allowed to take unfair advantage of another and

that no one is allowed to enrich himself unjustly at the expense of another.  Usage, as intended in

the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to

the object of a contract subject to interpretation." La. Civ. Code art. 2055.

"The determination of whether a contract is clear or ambiguous is a question of law.

Moreover, when a contract can be construed from the four corners of the instrument without

looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of

law and summary judgment is appropriate." *Angus Chem. Co.*, 782 F.3d at 180 (quoting *Sims v.*

*Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007)).  "[O]nly when there is a choice

of reasonable interpretations of the contract is there a material fact issue concerning the parties'

intent that would preclude summary judgment." *Amoco Prod. Co. v. Texas Meridian Res. Expl.*

*Inc.*, 180 F.3d 664, 669 (5th Cir. 1999).  "The Court may consider extrinsic evidence as to the

parties' intent only if the contract is ambiguous." *Thorne v. Bard Peripheral Vascular, Inc.*, No.

16-0262, 2016 WL 3746148, at *4 (E.D. La. July 13, 2016) (citing *Campbell v. Melton*, 817 So.

2d 69, 75 (La. 2002)).

### C.     The Effect of Defendant's Decision Not to Enforce the Non-Competition and Non-Solicitation Covenants

Defendant seeks summary judgment, and dismissal of this action, on the basis that

Defendant advised Plaintiff at the time of his termination that it would not enforce the non-

compete and non-solicitation provisions of Section 2 of the Agreement.  The parties dispute,

among other things, whether Defendant's voluntary withdrawal of its rights pursuant to Section 2 of the Agreement renders unenforceable Plaintiff's right to continued compensation pursuant to Section 4 of the Agreement.

Under Louisiana law, there are four elements for a valid contract: (1) capacity to contract; (2) mutual consent; (3) a lawful cause; (4) and an object that is lawful, possible, and determined or determinable. *Granger v. Christus Health Cent. La.*, 144 So.3d 736, 760-61 (La. 2013); *see also* La. Civ. Code arts. 1918, 1927, 1966, 1971. The term "cause" in the context of Louisiana contract law is defined as "the reason why a party obligates himself." La. Civ. Code arts. 1966, 1967. [4] Defendant argues that the compensation continuation provision became unenforceable in light of Defendant's statement that it would not enforce the non-compete and non-solicitation provisions. In short, Defendant argues that "[b]y immediately expressing its intent not to enforce the non-compete provisions upon Plaintiff's termination, Plaintiff's obligation under the compensation continuation provision, the 'cause' of the contract, was removed, and thus Defendant was not required to pay the compensation continuation." (R. Doc. 47-1 at 6).

The Court disagrees with this interpretation of the Agreement and the governing law. Foremost, there is no dispute that at the time the contract was formed, there was lawful cause. The preamble provides that the parties entered into the contract in consideration of (1) Plaintiff's continued at-will employment; (2) Plaintiff's promotion and salary increase; and (3) Plaintiff's access to confidential information. The Court need not look any further for a determination of Plaintiff's cause for entering into the Agreement. Continued employment is sufficient cause for entry into an employment agreement containing non-competition provisions. *See Cellular One,*

---

[4] "Louisiana does not follow the common law tradition that requires consideration to effect an enforceable contract." *Aaron & Turner, L.L.C. v. Perret*, 22 S. 3d 910, 915 (La. App. 1 Cir. 2009); *see* La. Civ. Code art. 1967, comment (c) ("Under this Article, 'cause' is not 'consideration.' The reason why a party binds himself need not be to obtain something in return or to secure an advantage for himself.").

*Inc. v. Boyd*, 653 So. 2d 30, 34 (La. App. 1st Cir. 1995) ("The defendants signed the agreements as a condition of continued employment. Employment was the valid cause of the contract."); *Henry v. New Orleans Louisiana Saints L.L.C.*, No. 15-5971, 2016 WL 2901775, at *5 (E.D. La. May 18, 2016) (citing *Cellular One*, 653 So. 2d at 34). Defendant has cited no civil code provision or jurisprudence indicating that a party to a contract can be relieved of promises made in a contract by unilaterally informing the other party that the "cause" of the contract no longer exists.

Section 5(e) of the Agreement provides that the "Agreement may not be later modified except by a further writing signed by Company and Employee, and no term of this Agreement may be waived except by a writing signed by the party waiving the benefit of such term." This language provides that Defendant could waive certain benefits in the agreement through a signed writing, but it does not provide that such a waiver would nullify any duties of Defendant or benefits to Plaintiff. Plaintiff would have to agree to such a modification of the Agreement or waiver of such benefit.

Furthermore, as stated above, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "One provision of the contract should not be construed separately at the expense of disregarding other provisions." *Baldwin v. Bd. of Sup'rs for Univ. of Louisiana Sys.*, 156 So. 3d 33, 38 (La. 2014). The non-compete and non-solicitation obligations found in Section 2 are triggered at the termination of Plaintiff's employment, regardless of whether Plaintiff is terminated "for cause" or "without cause." In contrast, the compensation continuation obligations found in Section 4 are triggered only if Plaintiff's employment is terminated "without cause." In other words, whether the payment obligations found in Section 4

are applicable has no bearing on Plaintiff's duty pursuant to Section 2, because that section applies regardless of why Plaintiff's employment was terminated.

Indeed, Section 4(a) of the Agreement states that if Plaintiff's employment is terminated "without cause," then "the provisions of Section 2 . . . shall apply."  This language reaffirms that the non-competition provisions of Section 2 apply even if Plaintiff is terminated without cause. To the extent that Section 4 is susceptible to different meanings, the foregoing interpretation provides a meaning "that renders it effective and not with one that renders it ineffective."  La. Civ. Code art. 2049.  The interpretation proposed by Defendant would essentially render Defendant's duty to pay continued compensation pursuant to Section 4 ineffective.[5]

Based on the foregoing, Defendant's Motion for Summary Judgment is **DENIED** to the extent it seeks dismissal on the basis that by advising Plaintiff at the time of his termination that it would not enforce the non-compete provisions of the Agreement, the continuity of compensation provisions of the contract became unenforceable.

### D.      The Meaning of "Without Cause" in Section 4(a)

The issue now before the Court is the interpretation of the term "without cause" in Section 4(a) of the Agreement.  The term "cause" is undefined in the Agreement.  The Court recognizes that provisions pertaining to termination with cause and without cause are ordinarily meaningful outside of the employment at will context, *i.e.*, if there is a specified term of employment.  However, "because an employer-employee relationship is a contractual relationship, an employer and employee may negotiate the terms of an employment contract and

---

[5] "Nearly every state has determined, using precepts similar to [Louisiana's] civilian principles, that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit." *Knecht v. Board of Trustees for State Colleges and Universities and Northwestern State University*, 591 So. 2d 690, 695 (La. 1991) (citing cases).

agree to any terms not prohibited by law or public policy." *Lannutti v. Stonetrust Commercial INS. Co.*, No. 15-678, 2016 WL 2889025, at *3 (M.D. La. May 17, 2016) (citing *Quebedeaux v. Dow Chem. Co.*, 820 So. 2d 542 (La. 2002)) (internal quotations omitted).

Similar to the instant case, the court in *Lannutti* recognized the enforceability of a contract provision pertaining to termination for cause that specified severance payments in the event of such termination. *Id.* The court noted that "such an agreement is enforceable and is not prohibited by Louisiana public policy." *Id.*  In *Lannutti*, however, the contract between the parties specifically defined termination "for cause" as well as the procedures that must be followed for such a termination to occur. *Lannutti*, 2016 WL 2889025, at *1.  The parties in the instant case did not define the scope of termination for cause that would render the continuity of payment provisions inapplicable.

Defendant argues that "cause" should be defined by its general dictionary meaning. (R. Doc. 46 at 15).  Defendant cites the 2nd Edition of Black's Law Online Dictionary, which defines cause as "that which produced effect; whatever moves, impels or leads," and a definition on Merriam-Webster.com, which Defendant represents defines "cause" as "a reason for an action or condition."  Based on these definitions, Defendant argues that Plaintiff's employment was terminated with cause on the basis that Defendant "decided to convert the Birmingham branch to an Encore Service Center, that Plaintiff's performance relative to service and parts was inadequate for the newly crafted position, and that another employee – Danny Satterfield – was more qualified for the position." (R. Doc. 47-1 at 8).

In contrast, Plaintiff argues that "without cause" should be provided its generally prevailing meaning in the employment termination context. (R. Doc. 52 at 5).  More specifically, Plaintiff argues that under Louisiana law, an employee is only terminated for or with "cause" if

11

the employee commits "wrongdoing, misconduct or misfeasance." (R. Doc. 55 at 4 (citing cases)).  Based on this interpretation of Louisiana law, Plaintiff argues that he is entitled to summary judgment on the issue of whether he was fired "without cause" because Defendant admitted, in response to a request for admission, that Plaintiff's "employment was not terminated because of any specific act of 'wrongdoing, misconduct or misfeasance.'" (R. Doc. 37-1). Plaintiff provides his own affidavit, stating, among other things, that (a) he was terminated without cause on May 1, 2015; and (b) that when he asked "company officials" whether he was being terminated for cause, he was told "it was nothing [he] had done wrong, and that [his] termination was just because they were doing away with [his] position at the branch where [he] worked in Birmingham, Alabama, and that they wanted to take the branch in a different direction." (R. Doc. 16-4 at 2).

The Court agrees with Plaintiff that the term "without cause" must be given its generally prevailing meaning in the context of employment contracts. *See* La. Civ. Code. Art. 2047.  While the contract in dispute does not involve a technical matter, "the Civil Code commands that words be given those meanings in the context of the contract as a whole—not in isolation or in a vacuum." *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 176 (5th Cir. 1999) (admonishing district court where it "never got past the out-of-context dictionary definitions" of certain terms in a commercial insurance contract).  Indeed, the Civil Code provides that "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048.

The Agreement is an employment contract containing provisions for non-competition, non-solicitation, non-disclosure of confidential information, and for continued compensation. Following the common definition provided by Defendant, termination for cause would be

termination for <u>any reason</u> provided as a basis for the termination. These reasons could be completely subjective and completely unrelated to Plaintiff's employment, performance or actions. The negotiated continuity of compensation provisions would be rendered meaningless, so long as some "reason" was provided. The Court does not accept such an interpretation as the common intent of the parties in entering the Agreement. Accordingly, the Court will determine the meaning of "cause" in the context of Louisiana law regarding the interpretation of employment contracts.[6]

There is no dispute that Plaintiff's employment was at will.[7] Because at will employees can be fired for any reason, Louisiana law primarily discusses the contours of whether termination is with or without "cause" in the context of employment contracts for fixed terms.

---

[6] Plaintiff argues that because Defendant furnished the original text of the Agreement, any ambiguity in its language must be construed against Defendant pursuant to Louisiana Civil Code article 2056. (R. Doc. 37-1 at 4). Article 2056 provides that [i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." That rule of contract interpretation is not applicable, however, where the parties specifically negotiated the inclusion of a particular provision. *See In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 441 (5th Cir. 2002) ("[W]hile the jurisprudence of Louisiana has established a rule of contractual interpretation which construes ambiguity against the party drafting the document in question, neither party is deemed to be the scrivener when . . . the initial draft is modified and remodified in a series of exchanges between the parties to produce an execution draft reflecting give and take between obligor and obligee."). The summary judgment evidence before the Court is insufficient to determine whether Art. 2056 should apply. Plaintiff testified that the original draft of the Agreement did not contain such a provision and that he negotiated the inclusion of what ultimately became Paragraph 4. (R. Doc. 46-1 at 148).

[7] The preamble and Section 5(d) of the Agreement provides that Plaintiff's employment was not for a specific term, and, therefore, Plaintiff's employment could be terminated at any time for any reason. *See*, *supra*, page 1 and footnote 1. That Plaintiff's employment could be terminated at will is consistent with Louisiana law. *See* La. Civ. Code art. 2747 ("A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for doing so. The servant is also free to depart without assigning any cause."); *see also Read v. Willwoods Cmty.*, 165 So. 3d 883, 887 (La. 2015) ("When a contract does not provide for a limited term, an employer can dismiss the employee at any time and for any reason without incurring liability."); *Brannan v. Wyeth Labs., Inc.*, 526 So. 2d 1101, 1103 (La. 1988) ("There is a consistent line of jurisprudence in this state holding that an employment contract for life or for an indefinite term is terminable at the will of either party."); *Chauvin v. Tandy Corp.*, 984 F.2d 695, 697 (5th Cir. 1993) (citing cases); *Wingreen v. Bd. of Sup'rs for Univ. of Louisiana Sys.*, No. 10-135, 2011 WL 3204708, at *3 (M.D. La. July 27, 2011) ("[U]nder Louisiana law, a person employed for an indefinite period is an at-will employee and, absent statutory, constitutional, or contract provisions to the contrary, may be terminated at any time without cause.") (citing La. Civ. Code art. 2747).

Where an employment contract is for a fixed term, the Civil Code provides that an employer may not dismiss an employee without cause, *i.e.*, "any serious ground of complaint." La. Civ. Code art. 2749;[8] *see also Read*, 165 So. 3d at 887 ("Under a limited term contract the parties agree to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without cause.").  Louisiana jurisprudence provides that when terminating a fixed term employment contract, "an employer must show *good* or *just cause* for terminating the employee during that term." *Reyes-Silva v. Drillchem Drilling Sols., LLC*, 56 So. 3d 1173, 1178 (La. App. 3rd Cir. 2011) (emphasis in the original) (citations omitted).

Based on the foregoing, the Court concludes that the term "cause" as found in the Agreement is to be defined as "good cause" or "just cause," in the same manner that term is used in Louisiana law regarding fixed term employment contracts.  Given the context and object of the Agreement, this interpretation of the term "cause" best describes the intent of the parties. Indeed, the term "cause" is used through the Agreement in the phrases "for cause," "with cause," and "without cause" to highlight that Plaintiff's employment was at will, but that additional consequences would apply (as in a fixed term contract) should the termination be without cause.

As discussed above, the out-of-context dictionary definitions of "cause" supplied by Defendant would render the continued compensation provisions meaningless.[9]  Furthermore, a

---

[8] Louisiana Civil Code article 2749 is titled "Liability for dismissal of laborer without cause."  It provides the following: "If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived."

[9] The online definitions offered by Defendant do not sufficiently capture the legal meaning of the term cause in its proper context.  The sources used provide additional definitions in the employment context that are applicable under the facts of this case.  For example, the 10th Edition of Black's Law Dictionary provides a second definition for "cause" as a "ground for legal action," further supplying a sub-definition for the term "good cause" as "a legally sufficient reason."  Black's Law Dictionary further states that the

14

recent decision in this district held that an at-will employment contract requiring the payment of severance payments where an employee is fired "without cause" is enforceable.  *See Lannutti*, 2016 WL 2889025 (granting partial summary judgment in favor of the plaintiff where, in light of the employment contract's definition of termination "for cause," the plaintiff's termination was "without cause"); *see also Reyes-Silva*, 56 So. 3d at 1179 ("While the Agreement does not guarantee employment for a fixed term, it does require just cause for termination during the first six months, which comports more closely with La. Civ. Code art. 2749 as fixed term employment than with the at will employment of La. Civ. Code art. 2747).

While the Court agrees with Plaintiff that it must look to Louisiana law to determine the meaning of the term "cause" in the Agreement, what constitutes good cause or just cause for termination of an employment contract under Louisiana law is not, as argued by Plaintiff, limited to specific acts of "wrongdoing, misconduct or misfeasance," unless defined as such in the contract.  Louisiana jurisprudence does not provide a default definition for what acts or omissions constitute good cause or just cause, *i.e.*, a "serious ground of complaint" as stated in article 2749, where the term "cause" is left undefined by the employment contract.  The Agreement provides only one example of conduct that would constitute cause for termination. Section 5(f) of the Agreement provides: "Employee acknowledges that disclosure of the terms of this Agreement, or of any of the discussions and negotiations regarding this Agreement, shall constitute cause for termination of Employee's employment with H&E." (emphasis removed). Under Plaintiff's proffered definition of cause, this specific conduct would fall beyond its scope.

---

term "good cause" is "often used in employment-termination cases" and is also termed "good cause shown; just cause; lawful cause; sufficient cause."  In addition to the Merriam-Webster definition offered by Defendant, that source also includes as a definition "sufficient reason" as in "<discharged for cause>."

Based on the foregoing, Plaintiff's Partial Motion for Summary Judgment and Defendant's Motion for Summary Judgment are **DENIED** to the extent they seek a ruling that the term "cause" in the Agreement is defined as proffered by those parties. The Court concludes that the term "cause" carries the meaning as used in Louisiana jurisprudence consistent with Louisiana Civil Code article 2749.

### E.   Whether Defendant Terminated Plaintiff's Employment Without Cause

Under Louisiana law, "[w]hether or not an employee has been fired for cause is a question of fact." *Desonier v. Golden Gulf Marine Operators, Inc*., 474 So. 2d 1314, 1318 (La. App. 5th Cir. 1985) (citing *Higgins v. Smith Intern. Inc*., 716 F.2d 278 (5th Cir. 1983); *Laneuville v. Majestic Industrial Life Ins. Co.*, 66 So. 2d 786 (La. 1953); *Morris v. Manufacturers' Enterprises, Inc.*, 442 So. 2d 582 (La. Ct. App. 1st Cir. 1983)). The determination of whether employment was terminated for cause, in the absence of contractual text defining what constitutes cause, is contingent upon the context of the employment contract and the employee's behavior. *See*, *e.g.*, *Lanier v. Alenco*, 459 F.2d 689, 693 (5th Cir. 1972) (failure to agree to reduced pay did not constitute good cause for discharge); *Kenner v. Southwestern Oil Co.*, 36 So. 895, 898 (La. 1904) (disobedience of lawful order is good cause for discharge); *Coates v. Hill Wholesale Distributing Co.*, 968 So. 2d 315 (La. App. 2nd Cir. 2007) (poor sales record is not good cause for discharge); *Ticheli v. John H. Carter Co., Inc.*, 996 So. 2d 437 (La. App. 2nd Cir. 2007) (*per se* violation of sexual harassment policy is good cause for discharge); *Desonier*, 474 So. 2d 1314 (affirming trial judge decision that termination was not for cause despite poor management); *Campbell v. Elcom of Louisiana, Inc*., 728 So. 2d 1035 (La. App. 2nd Cir. 1999) (failure to bring overtime expenses within budged amounts was good cause for discharge); *Neeb-Kearney & Co. v. Rellstab*, 593 So. 2d 741 (La. App. 4th Cir. 1992) (poor

16

performance and part-time work by vice-president did not constitute good cause for discharge);

*Benham v. Guilbeaux*, 356 So. 2d 1062 (La. App. 3rd Cir. 1978) (musician who took excessive

breaks and drank a lot was not fired for good cause where trial judge concluded the quality of the

music was not at issue, just whether the customers of the night-club employer liked the music).[10]

    In support of a finding that his discharge was without cause, Plaintiff has submitted an

affidavit that provides, in pertinent part, the following:

> My employment was terminated, without cause, by H&E on May 1, 2015.  At the
> time of my termination, I asked the company officials if I was being terminated
> because of my fault or anything I had done wrong.  The company officials told me
> no, it was nothing I had done wrong, and that my termination was just because
> they were doing away with my position at the branch where I worked in
> Birmingham, Alabama, and that they wanted to take the branch in a different
> direction.  They also terminated my administrative assistant at the same time and
> for the same reasons.

(R. Doc. 37-5 at 2).

    In support of a finding that Plaintiff's discharge was with cause, Defendant has submitted

declarations by Ramond Hardison, the Senior Vice President of Parts and Service for H&E who

promoted Plaintiff to the position of the Birmingham branch manager (R. Doc. 46-2), and by

John Engquist, Jr., who supervised Plaintiff in his role as Regional Vice President of H&E (R.

Doc. 46-4).  Mr. Hardison states that "[a]s branch manager, Plaintiff struggled in the service and

parts areas of his job" and "[m]any jobs required reworking which were performed at no charge

to the customer, resulting in a loss to H&E." (R. Doc. 46-2, ¶ 7).  Mr. Hardison further states that

---

[10] Notably, the dissent opinions in *Neeb-Kearney* and *Benham* would have found good cause for
termination.  These dissent opinions rely upon *Georesearch, Inc. v. Morriss*, 193 F. Supp. 163, 177 (W.D.
La. 1961), *aff'd sub nom. Morriss v. Georesearch, Inc.*, 298 F.2d 442 (5th Cir. 1962) ("Although the law
is far from clear and comprehensive, we believe . . . that if a person is not achieving the results for which
he was hired, whether it be due to incompetency, inefficiency or some other cause within his control, the
employer may discharge him from his employ.").   No majority opinion by a Louisiana court relies upon
*Morriss* for this proposition.

"[a]s a result of the reworks and customer complaints, the service component of the Birmingham branch performed poorly under [Plaintiff's] management." (R. Doc. 46-2, ¶ 10). Mr. Hardison further states that as a result of a restructure process, Defendant made the decision "to shift the focus of the Birmingham branch entirely to service and repair," which eliminated the "sales function of the branch manager job . . . because sales from Birmingham were not meeting expectation." (R. Doc. 46-2, ¶ 13, 14). Mr. Engquist similarly states that as a result of the restructuring, "management desired a person with a strong service background to take-over leadership of the now service-only branch." (R. Doc. 46-4, ¶ 5). Mr. Engquist states that because Plaintiff's "background and strength were primarily in sales, coupled with his deficiencies in the service and parts arenas, he was not qualified for the new leadership position in Birmingham" and, as a result, was discharged. (R. Doc. 46-4, ¶ 5).

Also in the record is a performance evaluation form dated August 17, 2011. (R. Doc. 46-3). All of Plaintiff's ratings were marked 3 or 4 out of a possible 4, with the exception to his rating for "Dedication to Safety," which was marked a 2 out of 4. The comments for this particular rubric states "Room for improvement. We need to enhance our safety procedures and practices at the Branch on a regular basis – need consistency in this area." (R. Doc. 46-3 at 4). Other handwritten comments include the following: "Always dependable." "Self motivated. Assumes responsibility." "Good attitude – can do attitude." "Motivated & driven by results. Works hard to meet company & personal goals." "Excellent customer advocate. Builds confidence for H&E with customers." "Good communication skills." "Team player. Has the ability to multi-task." "Uses Good judgment – wants to do the right thing." "Technical Knowledge of equipment in general and products we sell in particular is very good." "Good supervisory skills. Could be more forceful in demanding results from co-workers. Needs to

incorporate more use of . . . sales management system." The evaluation form provided that Plaintiff's overall rating was 3 out of 4, stating that he is a "Good employee. An asset to H&E." (R. Doc. 46-3 at 2-5).

The undersigned is the trier of fact in this matter. In order to determine whether Plaintiff was fired without cause, the undersigned will need to evaluate the credibility of the parties' witnesses to resolve the parties' factual dispute regarding whether Plaintiff was discharged with cause. *See Desonier*, 474 So. 2d at 1318 (La. App. 5th Cir. 1985). The foregoing competing affidavits and declarations, and other evidence in the record, indicate that there are disputed material facts with regard to whether Plaintiff's employment was terminated with cause.[11]

Accordingly, Plaintiff's Partial Motion for Summary Judgment and Defendant's Motion for Summary Judgment are **DENIED** to the extent they seek a ruling, as a matter of law, that Plaintiff was fired with cause or without cause.

### F.    Whether Plaintiff Suffered Damages

The final issues before the Court are whether Defendant should be awarded summary judgment on the basis that Plaintiff cannot prove that he suffered any damages; or whether Plaintiff's damages shall be set in accordance with the calculation applicable under Section 4 of the Agreement should the Court find that Plaintiff was terminated without cause.

---

[11] As pointed out by Defendant, Plaintiff did not file a proper response to Defendant's statement of uncontested facts in support of Defendant's motion for summary judgment. (R. Doc. 64 at 1). Local Rule 56(d) provides that "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Plaintiff's Opposition does not provide the required "short and concise statement" but does state that "Plaintiff disputes nearly all of the so-called 'Uncontested Facts' asserted by defendant. (R. Doc. 55 at 6). Given the record, and the Court's conclusion that there remain genuine issues of material fact, the Court excuses Plaintiff's failure to strictly comply with Local Rule 56(d). *See* Fed. R. Civ. P. 56(e).

Defendant argues that "Plaintiff cannot prove that any damage he has suffered is attributable to Defendant when 1) he was immediately informed that the non-compete would not be enforced, but 2) chose not to apply for another job despite that clear communication." (R. Doc. 47-1 at 10).  Defendant further argues that the continued compensation provision did not establish an amount of stipulated damages because it did not reasonably estimate the monetary loss to which Plaintiff would sustain in the event of a breach. (R. Doc. 64 at 4-5).  In opposition, Plaintiff argues that he was not required to mitigate his damages because the agreement to pay continued compensation amounted to an enforceable stipulated damages clause. (R. Doc. 55 at 7).

Generally, the plaintiff carries the burden of proof in a breach of contract claim, including proving that the defendant's "failure to perform resulted in damages" to the plaintiff. *Favrot v. Favrot*, 68 So. 3d 1099, 1107 (La. App. 4th Cir. 2011).  Louisiana law recognizes, however, that "[p]arties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation." La. Civ. Code art. 2005.  Where a plaintiff "avails himself of a stipulated damages clause," he or she need not prove actual damages caused by nonperformance. La Civ. Code art. 2009.  In addition, the default rule that a party to a contract must mitigate his damages, as provided by Louisiana Civil Code article 2002,[12] does not apply where a stipulated damage clause is present. *See Lombardo v. Deshotel*, 647 So. 2d 1086, 1092 (La. 1994).  "Stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy." La. Civ. Code art. 2012.

---

[12] "An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." La. Civ. Code art. 2002

At least one Louisiana court has found that an agreement to pay severance pay after the termination of employment for reasons other than willful misconduct amounts to a stipulated damages clause. *Carney v. Boles*, 643 So. 2d 339, 343 (La. App. 2nd Cir. 1994). Nevertheless, that decision found that the stipulated damages amount—an award of one year's pay—was contrary to public policy and reduced the award accordingly. *Id*. at 344. In reducing the amount, the Court stated that "[s]tipulated damages should reasonably approximate the damages suffered by the obligee and not be penal." *Id*. at 343 (citing *Am. Leasing Co. of Monroe v. Lannon E. Miller & Son, Gen. Contracting, Inc.*, 469 So. 2d 325, 328 (La. Ct. App. 2nd Cir. 1985)). The court further stated that it had to "determine the reasonableness of the amount of stipulated damages by inquiring whether the parties attempted to approximate actual damages in confecting the stipulated damages provision of the agreement." *Id*.; *see also John Jay Esthetic Salon, Inc. v. Woods*, 377 So. 2d 1363, 1367 (La. App. 4th Cir. 1979) ("True liquidated damages represent an amount, arrived at in a good faith effort by the parties at the time of contracting, to reasonably estimate the monetary loss which will probably be sustained in the event of a breach.").

Based on the foregoing analysis, the Court concludes that the continuing compensation provision provides for stipulated damages. La. Civ. Code art. 2005; *Carney*, 643 So. 2d at 343-44. As the Agreement provided for stipulated damages, Plaintiff does not have a duty to prove actual damages. La Civ. Code art. 2009. In addition, Plaintiff does not have a duty to mitigate his damages in light of the stipulated damages provision. *Lombardo*, 647 So. 2d at 1092.

Accordingly, Defendant's Motion for Summary Judgment is **DENIED** to the extent it seeks dismissal of the action on the basis that the continued compensation provision does not constitute a stipulated damages provision; that Plaintiff has a duty to prove actual damages; and that Plaintiff had a duty to mitigate his damages. The Court reserves for trial, if necessary, a

determination of the calculated amount applicable under Section 4, the reasonableness of such amount and whether that amount should be reduced pursuant to Louisiana Civil Code article 2012.[13]  Plaintiff's Motion for Partial Summary Judgment is **DENIED** to the extent it requested such a finding.

## III.    Conclusion

Based on the foregoing, Plaintiff's Partial Motion for Summary Judgment (R. Doc. 37) and Defendant's Motion for Summary Judgment (R. Doc. 47) are **DENIED** as set forth above**.** The action will proceed to trial on the issue of (1) whether Plaintiff was terminated with or without cause under the Agreement; and, if so, (2) what damages are to be awarded to Plaintiff under the terms of the Agreement and consistent with Louisiana law.

Signed in Baton Rouge, Louisiana, on January 27, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] In addition, if necessary, and in a separate proceeding, the Court will determine the amount of attorney's fees and costs to be awarded to any prevailing party pursuant to Section 3(e) of the Agreement, which provides that "[i]n the event any party hereto institutes any proceeding against any other party with respect to any controversy or matter arising out of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party such party's reasonable attorney fees and costs incurred in connection with any such proceeding."

22